We've got an interesting array of cases, and we appreciate those of you coming to add. First case up is St. Bernard Parish v. Lafarge, et al. Mr. Seymour, you're up, sir. Thank you, Your Honor. May it please the Court, my name is Richard Seymour. I represent the Mouvance appellants. There are three main questions that I'd like to address in the argument. The first is the timeliness of the application to intervene. The second is the lack of prejudice to existing parties if the intervention were granted. And the third is the prejudice to Mouvance if intervention is denied. On timeliness, everyone, all parties and their counsel, were aware of the fee claim throughout the litigation. The law of this Court and of all courts is clear that premature intervention is discouraged. Particularly in the case of a mass tort, premature intervention would require intervention in a very large number of cases to absolutely no purpose. There is no point and no function served by premature intervention because we had no stake in the contested litigation. We would not have done anything different from the parties. Our intervention was solely with respect to any fee recovery at the end of the day, so that when the lower court thought that contested proceedings would have to be redone, that was a clear error. The first that we knew that the retainer agreement, co-counsel agreement, and so forth were not going to be honored was July 20th when opposing counsel notified us that there was going to be a settlement and that we would achieve just pennies on the dollar for hard costs only and nothing for time. Three days later, we filed the notice of lien on St. Bernard Parish and on all counsel. Three days after that, they filed a joint stipulation of dismissal. On August the 9th, acting on instructions from the clerk of the Eastern District of Louisiana, we filed a motion for POHOC-BJ intervention. The same day that was opposed, the same day we filed the reply, and the reply had attached to it the draft application for leave to intervene. So all that was before the district court on August the 9th. Now, the key question is what starts the clock running? And this Court has been clear in Edwards v. City of Houston, which I had the honor of arguing before this Court, the en banc court held that we were wrong and that the applicants for intervention were right, that the clock starts running when the applicants for intervention first knew with specificity that no existing party was going to protect their interests. There was a dissent in that case that Judge Garza submitted that was joined by Chief Judge Stewart and Judge Dennis saying that there was enough general information to put them on notice before, but the en banc court disagreed with that. Under either standard, we would be timely because we had no information before July 20th that those agreements would not be honored. The second point I'd like to make with respect to lack of prejudice to existing parties. Go back to your first point. But at the time that the parties put you on notice that they weren't going to honor your fees, which is basically going to give you expenses, what reliance could you have had that any protection of your fees was going to be in the latter suit in which you didn't represent anybody? The argument the other way is that at the point in which they made clear that circumstances necessitating your withdrawal and they were only going to give you pennies, why would not that have been sufficient notice that you needed to take some action then? In other words, not what the latest notice might have been, but what was the other side's? The earliest notice you had was that your rights to a fee was disintegrated. Your Honor, we knew that there was going to be a settlement, but the notice because of the district court's entry of the dismissal retaining jurisdiction for a number of purposes. When the district court retains jurisdiction like that, that was in May, when a district court does that, the law of this circuit is that that entitles the district court to proceed on a subsequent application for fees to resolve any dispute over allocation. There was still nothing telling us that our interests were going to be adversely affected. Let me put it this way. In the Barge litigation, there's no doubt you were an active participant, had fees generated, right? That's right, Your Honor. Okay. In the second litigation, isn't it correct, you did not represent any party in that matter? Is that true? That's correct, Your Honor, but there's a reason for that. The reason for that is that we were forced out. And that's what happened is we were prepared to go forward with the case and represent St. Bernard Parish. New counsel insisted on a provision in a new co-counsel agreement saying that if for any reason, including death or disability, we were not actively litigating the case for a full five years, all claims for fees and expenses would be forfeit. At that point, I had just completed chemotherapy for leukemia. I have other serious health problems. And I did not know that I was going to be around in another five years and was not going to subject my family to that type of risk, particularly when I had the protection of Judge Duvall's order preserving the fee claim, the retainer agreement with St. Bernard Parish that recognized me as an interested party, and the co-counsel agreement with New Orleans counsel. So now that's one part of it. The second part of it is I was not on the papers as counsel for the record, but the work that we did in the three and a half years of litigation that I was allowed to participate in formed a heavy part of the work that was done in the St. Bernard Parish case. That's what's driving the question based on . . . There's no questioning you about why you didn't accept the agreement, but given from your standpoint, they put an onerous condition on you in terms of payment, so you're out, and yet you realize that a good portion of your work product is going to be used in this other case, a case in which you do not represent any party in the second case. So why . . . I hate to ask the why question, but wouldn't those two factors have driven a high alert that something specifically would be needed to protect your fee interest because there was no party you were representing, and they had basically . . . I mean, what higher notice could you have of a need to protect your fee when they're going to use parts of it in a lawsuit and you don't represent anybody? Well, Your Honor, the proposed agreement that was submitted to me in which I rejected, I asked for a change in that provision. They refused to make the change, but nothing in that agreement said that it invalidated the retainer with St. Bernard Parish. Nothing in that agreement . . . and St. Bernard Parish was not involved. This was new counsel from New York that were insisting on this clause. And there was nothing saying that the co-counsel agreement that I had with New Orleans Counsel was going to be invalidated. But going directly to the point, what purpose would it have served to have intervened in the action at that point? None, because I would not be litigating on behalf of St. Bernard Parish. I would simply be sitting on the sidelines receiving the same kind of notice that you would receive if you simply checked the electronic case filing docket information from time to time. I know we're talking today about intervention, but am I missing something? Is there a reason why you couldn't sue the parish in state court for a breach of contract or unjust enrichment or some other theory? That is where the prejudice to us comes in, Your Honor. There is a confidentiality agreement with respect to the settlement Lafarge reached with St. Bernard Parish. Under that confidentiality agreement, we do not know how much the case was settled for. We do not know how much went for fees. We do not know how much went for costs. If we were to file a separate lawsuit, we would not have . . . it would be much more difficult to overcome the confidentiality order. Now, obviously, we would agree to any kind of protective order for that. But this Court has recognized that one of the grounds for intervention as of right is the difficulty in overcoming a confidentiality order. That is one of the cases that was cited by the plaintiff, Ampelee, in his brief, John Doe 1 v. Glickman. And that's the pages . . . I apologize for not having the page citation on the case. But that Court said the difficulty in overcoming a confidentiality order, if you did not have intervention in this case, is one of the reasons why intervention as of right was necessary. Can you sort of flesh out for me how you believe . . . you filed your 28J materials about settlement of the New York action. And I wonder if you could flesh out for me how you think that impacts or helps your case. It wasn't immediately . . . Well, in the New York action, we moved to dismiss. That was denied. Although the judge rested on in rem jurisdiction, the judge actually purported to enjoin us from proceeding in this case before this Court. He enjoined all parties from proceeding in any other forum, which is both extraordinary in its own right, if the Court had jurisdiction over us, really extraordinary since it was only in rem jurisdiction. But even the in rem jurisdiction is constitutionally deficient for the reasons that we set forth in our brief. Now that . . . there's an appeal before the New York Supreme Court Appellate Division, Second Department. We filed our brief in that. Today is November 6th. In two days, the other side is to file their responsive brief. But coming back to the initial point that Your Honor made, it is only by intervention in this case that we have the opportunity to have all the parties. If we were . . . if we would file in federal court under diversity, we could certainly sue St. Bernard Parish, Lafarge, and all counsel because there's plenty of contacts with the State coming out of the litigation in this case. So it's possible to have all parties here in one court and deal with the confidentiality order in the application for intervention. But we could not sue Lafarge in a separate case because there's no claim against Lafarge. Lafarge's only stake is the preservation of this confidentiality order. They have not thought that that intervention would cause them any prejudice because they haven't even taken a position in this court. They haven't filed a brief, and we did not hear an argument. If we were to reverse the district court, if we were to find that your motion to intervene was timely, is the record in your view sufficient for us to decide the other elements for intervention? Or would it need to go back for some reason? Well, the lower court made clear errors of law a fact and made . . . used the wrong legal standard. So the abuse of discretion standard is met. I think the record is sufficient to allow this court to hold that application for intervention as of right should have been granted. If not that, it's sufficient to show that permissive intervention should have been granted. But if not, the district court can reevaluate it under a different standard. What we want is to preserve the ability to proceed on the fees in a form in which it's possible to find out what the stakes really are, and that makes it possible potentially to resolve the case and is absolutely essential in order to litigate the case. I'm not sure I understood your response to Judge Willis' question about any prohibition on you filing in state court. I heard what you said, but is there a case or a Louisiana statute that would have prohibited you from filing a state action to preserve your fee claim? Your Honor, we could . . . there is no statute. We could not, in a separate case in St. Bernard Parish Court, we could not add Lafarge as a party. We would have the problem with confidentiality agreement. It is much harder to ask a court to set aside a confidentiality agreement as to a non-party than it is as to a party. But we would, in any event, be filing in federal district court. I'm not a Louisiana attorney. I'm not familiar with Louisiana civil procedure. I am familiar with federal court civil procedure. And, of course, if we filed in the district court, the Eastern District, Louisiana, it would be a related case. It would go back to Judge LaMille anyway. Your Honor, I believe I'll reserve the rest of the time for rebuttal. All right. Thank you, sir. Mr. Gilbert. I say good morning to the members of the panel and may it please the Court. Unless the panel wants to jump right in to some questions, I'm going to focus on rebutting a few of the things that Pellitt has stated on the record. This is not a mass tort. This is one singular case. And, well, I have to straddle a line here because there is actually no record of what took place. And Appellant's are arguing facts that are not established in the record below. This really is a question of law. But Appellant knew that the contract that he found onerous and offensive was in order to proceed on behalf of St. Bernard Parish in this one singular case. So to say that I would have to intervene in an unquantifiable number of cases at the outset, that's incorrect. But counsel was not forced out of this case. Counsel didn't like the provision in the contract. I got sick, spent four or five weeks in the hospital. One of us died. One of us went blind with diabetes. We all stayed in the contract. It's a personal decision and, of course, it's one that he's allowed to make. But the point is, he made it back in 2011 before the underlying case was even filed. And he knew that that was impending. But now, if we're talking about time onerous, which is really all we should be talking about under the appropriate standard of review, we're not only talking about something at the very last hour. We're talking about after two dismissals of the case. And we're talking about two successive attempts to intervene in this case where Judge LaMelle has cogently, copiously, and patently written in such a way that his reasons are not even open to attack. The standard of review where the issue is one of timeliness, and the Court below has articulated reasons that the timeliness condition is not met. And, mind you, with respect, members of the panel, the timeliness condition is applicable to both intervention of right and permissive intervention. Where timeliness is not met, review is for abusive discretion only. This is not about prejudice. This is not about his difficulty in bringing a State action, which there's nothing to base that on. That's pure conjecture. And that's not to say that a State action would lie. But an intervention here doesn't lie either. The question that the Court posed or the appellant raised as to whether any party was going to protect his interest, he knew he was not a participant. But he's also an attorney, and he has just said that he had access to CMECF, and he can monitor the case, do his due diligence, if he does not want to intervene up front. But to wait until the end, Judge Lamel speaks to that. The law speaks to that. The Summers case speaks to that. I'm going to quote from that. What matters is not when, putative intervener, knew or should have known that their client had an interest in the case. He's arguing that he had an interest in the case. We disagree. But if that's his position, then that interest preexisted the case even being filed. So this intervention could have been filed as soon as the underlying case itself commenced in State court, or he could have waited until removal to the eastern district below. Procedurally, when the second case was filed, and he had ostensibly an entitlement to his fees, if he had filed some kind of action on a Louisiana statute to preserve his attorney's fees or liens or whatever in that action, wouldn't the district court have had jurisdiction to pull that claim in? I would think so, under its supplemental jurisdiction. And it would have put all the parties on notice. One of the fallacies here, I mean, one of the inconsistencies that I think is pretty obvious is that appellants say, okay, well, we're just looking for our fees, but in different page, different context, we're just looking for our costs. Costs are payable by a client under a contingency fee contract, which it's not true that — it's not entitled to intervention, but it's not true that if he were, this could be done in a surgical way such that the underlying case does not have to be reopened and go back onto the trial docket for a 7-week trial or whatever it was going to be. And the point is, if he's looking for costs, the attorneys that handled the case that he did not are not a backstop for costs that he claims that he's entitled to but did not perfect such a claim, not timely. And what it comes down to, and, you know, there's a judge anywhere that has an attorney, hasn't heard an attorney say, oh, this is so simple. But really, all this comes down to is whether or not Judge LaMelle was well-founded in his — and articulated well enough his reasons for finding that this application was untimely. And that one factor alone is dispositive of intervention of right and dispositive of permissive intervention. In your view, does the — I'm sorry, Chief, I don't know. I'm sorry, Your Honor. In your view, does the settlement of the New York State court interpleader action do anything to change the analysis here? All right. I have to confess, not only was I in the hospital for several weeks. I went deaf. I'm sorry, Your Honor. Could I ask you to repeat that? Oh, sorry about that. In your view, does the settlement of that New York State court interpleader action have any impact on the analysis here? No, it doesn't, because he was a party to that and chose to demur. He could have done the same thing in New York that he is seeking to do here, but it is a finite, closed action not involving the original parties in the underlying litigation that's before this Court that we don't want to have to reopen and put back on the trial docket. He had a forum. He rejected it. Mr. Seymour has responded in part in a couple of different ways to say that the confidentiality agreement was a bar to him having taken actions. What is your response to that? I think that that is probably very, very speculative, and there has been no application to any court for an order disclosing the confidentiality agreement, and all that's confidential is the total amount of the settlement. The amount of the amounts that that yielded to the attorneys that actually participated in the case, well, there may be more to the confidentiality agreement than just the amount of the settlement. I don't have it in front of me. I'm going to be overly cautious about it. But if it was a matter that needed to be known, there are devices under both Federal and Louisiana procedural rules for protecting against dissemination of that information. Mr. Seymour mentioned the possibility of a protective order. I'm sure that everyone would agree. And that would be effective, and it could have that protective order itself, could have some highly penal provisions to it. I've litigated cases before involving minor children where we've put protective order in place, and it is 100 percent effective. Nobody wants to violate that protective order. But Mr. Seymour is saying it would be more difficult. There's no basis to say that. There's no record. There's nothing to base that on. That's just conjecture and argument, and that's all that is. That's my response to it. Has his fees ever been quantified or you or others on that side been presented with some listing or quantification of the fees that he says he's entitled to? We have. We have. If there are no other questions, I'm going to yield the balance of my time back to the Court. Okay. Thank you. All right.  Thank you, Your Honor. Mr. Seymour, as a matter of course, you filed a 28J yesterday, but the Court entered it. You filed a 28J yesterday citing some Louisiana statutes. But as a matter of course, we entered an order rejecting that. It's really not a 28J. Under the rules, it wasn't new cases or new law. Those were Louisiana statutes that you adverted to. It really was more arguments. So they are not a part of the case. I understand, Your Honor. I do wish to correct a statement that I made before. This Court's decision saying that problems with the confidentiality order justified intervention was actually made in one of the cases cited by the plaintiff, Ford against City of Huntsville. And the statement is at 242, F-3rd, 235, at 240. You argued in your initial, you argued Edwards and so on and so forth. But cutting to the chase, what's the best case you're relying on, on this sort of unique scenario that would say, given the standard of review, abuse of discretion, et cetera, that you ought to prevail? I mean, what's the closest case, you know . . . I mean, I know what Edwards, the in-bank court said, but that had a whole lot of issues in it. But I'm asking, given this scenario, particularly the amount of time, et cetera, what's the best case you're relying on, that it was an abuse of discretion for the district court to not permit you to intervene at this latter date? Your Honor, that would be the Supreme Court's decision in Cooter and Gell against Hart-Marx Corporation. And that's for the proposition that abuse of discretion is shown either when the lower court makes a clear error of fact in its findings or when the lower court uses an incorrect legal standard. Both of those are present here. I do want to refer to the Summers case that counsel referred to in argument. Well, what's the factual error? Nobody is disputing the time chronology of events, right? Well, that's right, Your Honor. And there's really two points. One of them is that no function would have been served by our intervening in 2011. There simply was no function. The second is that this . . . And it was a factual error. I mean, that's the argument. That's not a factual error. I'm saying there's no dispute in the chronology of events of when things occurred or didn't occur. Isn't that correct? That's right, Your Honor. But the lower court made a number of factual errors as well as errors of law, and those are set forth in our opening brief. The . . . I apologize. I lost my track. Edwards v. City of Houston en banc decision held that it's the time clock starts running when you know that your interest is not being served by an existing party. That was only on July 20th when we got the notice from opposing counsel that this was going to happen and that we were going to be cut out. The Summers case on which the lower court relied is sui generis. The Court did say that what matters is not when he knew or should have known his interest would be adversely affected, but when he knew he had an interest in the  But the factual context makes the case inapplicable. The factual context is that the pro se applicant for intervention was the owner of a business that was in bankruptcy, and he tried to intervene in order to challenge a mediated settlement the trustee in bankruptcy had made with the Bank of America. This was his business that was at stake, and he had information far greater than the And further, the Court found there was absolutely no prejudice because the whole application for intervention was founded on a mistake that his rights to proceed against the Bank of America were going to be restricted. Instead, his rights were expanded by the settlement. So that's not good authority for this case. Going back to Edwards, the intervenors in that case knew that we were challenging the entire promotional system for the Houston Police Department for the ranks of sergeant and lieutenant. They knew that we were claiming that the tests were unlawful and were not justified by business necessity. They knew that we were seeking systemic relief. They knew that we were proceeding as a class action. The police chief had sent out a memorandum a couple of months before the settlement saying that the I've got a red light. Let's just see more. I see you have a red light. Oh, I'm sorry. Once, if you want to finish in one declarative sentence, no semicolons, no colons, then I'll let you do that. And yet that was not enough. Thank you, Your Honor. All right. Thank you, sir. All right. Thank you. Both counsel. The case will be submitted. All right. We call up SEC versus Arcturus Corporation.